UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 12, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Richard B. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-3193-BAH

Dear Counsel:

On December 12, 2022, Plaintiff Richard B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8), the parties' dispositive filings (ECFs 12 and 14), and Plaintiff's reply (ECF 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on June 20, 2018, alleging a disability onset of April 19, 2017. Tr. 396–408. Plaintiff's claims were denied initially and on reconsideration. Tr. 222–30, 235–42. On February 2, 2017, an Administrative Law Judge ("ALJ") held a hearing, *see* Tr. 82,[1] and on April 19, 2017, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 79–102. The Appeals Council granted Plaintiff's request for review, vacated the decision, and remanded the case to an ALJ. Tr. 216–21.

On June 22, 2022, a different ALJ held a new hearing. Tr. 45–78. On July 19, 2022, the ALJ issued a decision denying Plaintiff's claims. Tr. 13–44. The Appeals Council denied Plaintiff's request for review of the July 19, 2022, decision, *see* Tr. 1–7, so that decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] The record before the Court does not contain a transcript for the February 2, 2017 hearing.

[2] 42 U.S.C. §§ 301 et seq.

*Richard B. v. Kijakazi*
Civil No. 22-3193-BAH
September 12, 2023
Page 2

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 19, 2017, the alleged onset date."  Tr. 19.  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "fibromyalgia/connective tissue disease, functional neurological disorder, psychogenic nonepileptic seizures, depressive disorder, borderline personality disorder, bipolar/depressive disorder, post-traumatic stress disorder, attention-deficit hyperactivity disorder, adjustment disorder, narcissistic personality disorder, conversion disorder, and marijuana use."  *Id.*  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "traumatic brain injury," "asthma," "chronic fatigue disorder," "vitamin D deficiency," "hyperthyroidism," "hyperlipidemia," and "autism spectrum disorder."  Tr. 20.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 21.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can never climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs.  He can occasionally balance, stoop, kneel, crouch, and crawl.  He cannot tolerate exposure to extreme cold or heat, nor hazards such as dangerous moving machinery and unprotected heights.  He can tolerate occasional interaction with coworkers, supervisors, and the public, and can tolerate occasional changes in the work setting[.]

Tr. 23.  The ALJ determined that Plaintiff was unable to perform past relevant work as a collection clerk (DOT[3] #241.357-010), a customer service representative (DOT #241.367-014), or a sales

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the*

agent (DOT #250.257-010). Tr. 32–33. However, the ALJ determined that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Tr. 33. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 35.

### III.   LEGAL STANDARD

A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Craig*, 76 F.3d at 589).

### IV.   ANALYSIS

On appeal, Plaintiff argues that "[s]ubstantial evidence does not support the ALJ's denial of benefits because the ALJ failed to properly evaluate Plaintiff's severe fibromyalgia." ECF 12, at 7. Specifically, Plaintiff avers that the ALJ erred by "impermissibly discarding Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms by relying on normal objective findings on examination or imaging as evidence to discount Plaintiff's symptoms of pain and fatigue." *Id.* at 9. Defendant counters that the ALJ appropriately evaluated Plaintiff's subjective complaints regarding fibromyalgia in assessing the RFC. ECF 14, at 6–17.

The Fourth Circuit has held that an ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas*, 983 F.3d at 97. In *Arakas*, the Fourth Circuit found that an ALJ properly concluded that a claimant's "medically determinable impairments 'could reasonably be expected to cause some of the alleged symptoms,' thus satisfying the first step of the symptom-evaluation framework." *Id*. at 96. "But at the second step, the ALJ improperly discredited [the claimant's] statements about the severity, persistence, and limited effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id*. (internal citations omitted). "Because [the claimant] was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' the ALJ 'applied an incorrect legal standard' in discrediting her complaints based on the lack of objective evidence corroborating them." *Id*. (alterations in original) (internal citations omitted). The court concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id*.

Plaintiff persuasively argues that the ALJ in this case erred in assessing his fibromyalgia.

---

*Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Richard B. v. Kijakazi*
Civil No. 22-3193-BAH
September 12, 2023
Page 4

    Here, the ALJ determined at step two that Plaintiff suffered from severe "fibromyalgia/connective tissue disease." Tr. 19. The ALJ noted that Plaintiff alleges an inability to work due to, among other things, "fibro fog," and that Plaintiff takes cyclobenzaprine for fibromyalgia pain. Tr. 24. The ALJ then engaged in a discussion of Plaintiff's fibromyalgia symptoms:

> The record supports a longstanding diagnosis of fibromyalgia; however, there is little in the way of treatment or evaluation for fibromyalgia or connective tissue disease in the record. A chiropractic provider reported 16 out of 18 tender points, 6 acute, 5 moderate, and 5 mild in August 2017 (C2F/3). However, a chiropractor is not an acceptable medical source to establish a diagnosis. 20 CFR 404.1513(a) and 416.913(a). The claimant also complained of intermittent low back pain in October of 2017 but the claimant did not have tenderness, swelling, nor edema[4] (C4F/10).

*Id.* The Court agrees with Plaintiff that this discussion constitutes error. As the Fourth Circuit recognized in *Arakas*, "[o]bjective indicators . . . simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Arakas*, 983 F.3d at 97. As such, the ALJ's apparent discreditation of Plaintiff's lower back pain due to a lack of two objective indicators (namely, "swelling" and "edema") reflects a misunderstanding of the proper evaluation of fibromyalgia, which produces almost no objective medical evidence of its existence.[5] *See Arakas*, 983 F.3d at 97; *id.* at 96 ("Since swelling . . . is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.").

    The ALJ's reference to Plaintiff's lack of "tenderness" also constituted error. Tr. 24. *Arakas* recognizes that "tenderness in specific sites on the body" may be properly assessed as objective evidence of fibromyalgia. *Arakas*, 983 F.3d at 97. However, if such evidence is considered, it must be "treated as evidence *substantiating* the claimant's impairment." *Id.* at 97–98 (emphasis in original). Here, the ALJ contravened that mandate by discounting the intensity of Plaintiff's fibromyalgia-related back pain due, in part, to a lack of tenderness. Tr. 24. This constitutes error under *Arakas*.

    The ALJ's evaluation of the RFC assessment conducted by a different ALJ in April 2017 compounds the *Arakas* error. *See* Tr. 32. The ALJ found the prior ALJ's RFC, which "assessed

---

[4] "Edema is swelling caused by too much fluid trapped in the body's tissues." Edema, Mayo Clinic (July 28, 2023), https://www.mayoclinic.org/diseases-conditions/edema/symptoms-causes/syc-20366493.

[5] The Court is mindful that Plaintiff was also found to suffer from other impairments which may, unlike fibromyalgia, produce objective evidence of their existence. *See* Tr. 19. But, because the ALJ discussed objective findings within the same paragraph referencing Plaintiff's fibromyalgia, *see* Tr. 24, the Court cannot infer that the ALJ's discussion of this evidence was intended to pertain to a different impairment that does produce objective evidence.

a range of medium work," to be "persuasive as it is supported by evidence, as discussed above, of global body pain and some weakness and diminishment of range of motion in the lumbar spine based on fibromyalgia and/or functional neurologic disorder as well as psychogenic seizures, but with minimal longitudinal and consistent treatment and objective signs." *Id.* This analysis amounts to error inasmuch as it is based on a "misunderstanding of fibromyalgia." *Arakas*, 983 F.3d at 98. Neither weakness nor a diminished range of motion are relevant to "the severity, persistence, or limiting effects of" fibromyalgia. *Id*. at 96; *see Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) ("[P]hysical examinations [of patients with fibromyalgia] will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions."). Moreover, the ALJ apparently suggests that the prior ALJ's RFC assessment was persuasive because the evidence demonstrated "minimal . . . objective signs" of fibromyalgia. Tr. 32. As discussed above, such signs are irrelevant in evaluating fibromyalgia. *See Arakas*, 983 F.3d at 97. Accordingly, the ALJ's RFC here was informed by an incorrect understanding of fibromyalgia which, if rectified, may affect the outcome of this case on remand.

In sum, the ALJ's improper evaluation of Plaintiff's fibromyalgia warrants remand. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

## V.     CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g). The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge